IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

K.J.,

           Plaintiff,

      v.

STATE OF OREGON, et al.

           Defendants.

Case No. 6:25-cv-1973-MC

OPINION AND ORDER

_____

MCSHANE, Judge:

Defendant David Molstad moves to dismiss Plaintiff's 42 U.S.C. § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 1, ECF No. 8. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff's § 1983 claim is timely. Defendant Molstad's Motion to Dismiss, ECF No. 8, is **DENIED**.

**BACKGROUND**[1]

Plaintiff, born in 1992, was prosecuted as an adult for crimes he committed as a minor. Compl. ¶ 11, ECF No. 1. In 2009, at age 17, K.J. was transferred to the physical custody of the Oregon Youth Authority (OYA). *Id.* In January 2010, K.J. was transferred from another facility to MacLaren Youth Correctional Facility to be treated for complications arising from an emergency appendectomy. *Id.* at ¶ 12–13.

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations as true. *See Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

1 – Opinion and Order

At the time of Plaintiff's transfer to MacLaren, Edward Gary Edwards, now deceased, served as a pediatrician at MacLaren. *Id.* at ¶ 8, 13. Edwards was known as "Dr. Cold Fingers" within MacLaren "because he was infamous for fondling youths' genitals . . . with cold, ungloved hands." *Id.* at ¶ 9. Upon Plaintiff's transfer to MacLaren, he was brought by OYA staff to receive medical care from Edwards. *Id.* at ¶ 13. Edwards informed Plaintiff that a physical was required as part of Edwards's examination of Plaintiff. *Id.* Edwards instructed Plaintiff to remove his clothing and underwear. *Id.* Plaintiff questioned Edwards as to why a physical was required, citing a recent physical at his prior facility. *Id.* Edwards told Plaintiff that a physical was an ordinary part of intake procedures and Edwards's job. *Id.* After Plaintiff had removed his clothing, Edwards, "seated on a stool," "had [Plaintiff] stand before him." *Id.* Then, Edwards "rolled both of [Plaintiff's] testicles" and "lifted, rolled, and stroked [Plaintiff's] penis with his ungloved hands." *Id.* "Edwards continued to manipulate [Plaintiff's] penis in this manner for about 10 minutes while [Plaintiff's] penis repeatedly became erect and relaxed." *Id.* "Edwards told [Plaintiff] that his penis 'looked nice' and that his 'doctor did a good job on his circumcision' and that it was 'very healthy and handsome.'" *Id.* Edwards then treated the complications of Plaintiff's appendectomy. *Id.*

After leaving his appointment with Edwards, Plaintiff immediately reported "his interaction with Edwards to the staff at Kincade Cottage."[2] *Id.* at ¶ 17. Staff instructed Plaintiff to "submit a written complaint" to treatment manager Defendant Molstad, which Plaintiff later did. *Id.* at ¶ 5, 17. On the day of the incident, Plaintiff also called his father and described his interaction with Edwards. *Id.* at ¶ 18. Plaintiff's father subsequently called a Kincaide staff member to report the incident. *Id.* The staff member told Plaintiff's father that Plaintiff's

---

[2] Plaintiff's complaint does not offer context as to what the Kincaide College subunit of MacLaren is.

complaint was exaggerated and that "there was nothing to worry about." *Id.*

"A couple of days after [Plaintiff] filed his complaint, [Defendant] Molstad summoned [Plaintiff] to his office to address the complaint." *Id.* at ¶ 19. With the assistant treatment manager present in the office, Defendant Molstad asked Plaintiff to describe his interaction with Edwards. *Id.* After Plaintiff explained, Defendant Molstad told Plaintiff that "he needed to stop trying to get out of his punishment, [and] that [Plaintiff] needed to take accountability for his own criminal actions before he accuses a professional of doing his job." *Id.* Defendant Molstad said that Plaintiff's "crime distorted his thinking and that [Plaintiff] was trying to minimize his being an offender by trying to become a victim." *Id.* Defendant Molstad said that "he knew Edwards for a long time and that he could never imagine" Edwards abusing Plaintiff. *Id.* Defendant Molstad accused Plaintiff "of inciting an incident" involving other youths within MacLaren and "told [Plaintiff] that if he did not stop speaking about this incident [with Edwards, Defendant Molstad] would deem [Plaintiff] a treatment failure and transfer him to . . . a more restrictive housing unit." *Id.* Plaintiff later spoke to "mentor staff" regarding his interaction with Edwards and they told Plaintiff to "'let it go' because it would only create conflict for [Plaintiff]." *Id.* at ¶ 20.

Over the next six years, while Plaintiff was housed at MacLaren, he was seen by Edwards an additional ten times, and each time, Edwards "touched [Plaintiff's] genitals in a [similar] manner . . . ." *Id.* at ¶ 14. In the wake of Plaintiff's discussion with Defendant Molstad, he "doubted that abuse had occurred and was occurring each time he met with . . . Edwards." *Id.* at ¶ 21. Plaintiff "believed that Edwards['s] actions were medically appropriate based on a combination of Edwards['s] expertise, Molstad's treatment of [Plaintiff's] complaint and threat of punishment and denial of treatment if continued, and the normalization and MacLaren staff's

knowledge of Edwards[’s] physical examination of [Plaintiff] and other children.” *Id.* Because Plaintiff believed that Edwards’s actions were medically necessary, he refrained from “filing additional complaints, administrative remedies, or seeking redress for his injuries with the courts.” *Id*

Plaintiff brings two claims. *Id.* at ¶ 28–43. At issue here is Plaintiff’s second claim, against Defendant Molstad, which alleges a violation of Plaintiff’s 14th amendment due process rights. *Id.* at ¶ 32–43. Plaintiff alleges that Defendant Molstad’s conduct caused Plaintiff to “[lose] the opportunity to sue [Edwards and MacLaren staff]” because Defendant Molstad threatened Plaintiff and convinced Plaintiff the initial incident with Edwards did not happen. *Id.* at ¶ 38. Plaintiff alleges that he only “discovered the causal connection between his abuse, the resulting injuries distinct from the abuse itself, and the responsibility of Defendants in causing those injuries” within the last two years. *Id.* at ¶ 26. Defendant Molstad moves to dismiss Plaintiff’s § 1983 claim, arguing Plaintiff’s claim is time-barred. Mot. Dismiss 2.

## LEGAL STANDARD

Rule 12 permits a defendant to move to dismiss for the “failure to state a claim upon which relief can be granted.” Fed. R. Civ. P. 12(b)(6). “On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.” *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). To defeat a 12(b)(6) motion, a plaintiff must plead a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.* at 678. To plead a facially plausible claim, a plaintiff must show “more than a sheer possibility that a defendant has acted unlawfully.” *Id.*

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679). When evaluating whether a plaintiff has stated a claim, the court cannot consider "matters outside the pleadings." Rule 12(d). The court instead asks only whether the complaint's factual allegations, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint that satisfies this standard is "well-pleaded" and "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Id.* at 556.

### DISCUSSION

Taking Plaintiff's complaint as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's § 1983 claim is timely. Section 1983 imposes liability on those who, under the color of state law, subject or cause the subjection of another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." It does not, however, contain a statute of limitations. Instead, § 1983 borrows the general personal injury statute of limitations from the forum state, including the forum state's law regarding equitable tolling, "except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) When Oregon is the forum state, the governing statute of limitations for a 1983 claim is O.R.S. § 12.110, which requires tort claims to be filed within two years of their accrual. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). When a claim accrues while a plaintiff is a minor, the statute of limitations is tolled for "no more than five years" or until the minor turns 19, whichever comes first. O.R.S. § 12.160(1), (2).

A § 1983 claim accrues "'when the plaintiff knew or in the exercise of reasonable

5 – Opinion and Order

diligence should have known of the injury and the cause of that injury,'" not "when the plaintiff suspects a legal wrong." *Bonneau*, 666 F.3d at 581 (quoting*Lukovsky v. City and Cnty. of S.F.*, 535 F.3d 1044, 1049 (9th Cir. 2008)). "An action ordinarily accrues on the date of injury." *Ward v. Westinghouse Can., Inc.*, 32 F.3d 1405, 1407 (9th Cir.1994). Factual inquiries determining precisely when a plaintiff became aware of their injury is generally a question for the jury. *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1160 (2025). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

The accrual of § 1983 claims involving sexual abuse can be delayed by a plaintiff's vulnerability at the time of alleged incident, power imbalances between the plaintiff and defendant, and plaintiff's shame, humiliation, and guilt. *St. Clair*, 154 F.4th at 1160. In *St. Clair*, the court considered a 12(b)(6) motion attacking the timeliness of a § 1983 claim involving sexual abuse by a sheriff's deputy. *Id.* at 1157–58. Plaintiff alleged that the deputy repeatedly "took advantage of her addiction to methamphetamines and involvement in criminal activity to coerce her into . . . unwanted sexual conduct." *Id.* at 1156. Plaintiff alleged that due to her addiction, age, and coercion, "she only came to understand she had been harmed [years later] when she read a news article . . . detailing [the deputy's] inappropriate sexual conduct with other similarly situated women." *Id.* at 1157, 1160. The court held that the plaintiff alleged sufficient "evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing," noting "'what [the plaintiff] knew and when she knew it are questions of fact,' better left for a jury." *Id.* at 1160 (alteration in original) (quoting *Simmons v. United States*, 805

F.2d 1363 (9th Cir. 1986)). The Court reached this conclusion despite Plaintiff's recognition, at the time of the first unwanted sexual encounter over a decade before her filing of the complaint, that she provided sexual acts to the officer in exchange for the officer not pursuing unrelated criminal charges against the Plaintiff. *Id.*

Here, Plaintiff alleges that by convincing him that his initial interaction with Edwards did not occur, and by threatening to revoke his privileges if Plaintiff did not withdraw his complaint, Defendant Molstad deterred Plaintiff from pursuing legal action against Edwards and MacLaren. Compl. at ¶ 21. Defendant Molstad argues that Plaintiff's claim accrued at the time of Plaintiff's alleged abuse because Plaintiff's allegations confirm that Plaintiff knew at the time that these were not, in fact, physicals performed in the scope of Dr. Edwards's role as a physician. Mot. Dismiss 6–7. Plaintiff's § 1983 claim, however, does not seek relief for the injury of his abuse. Compl. at ¶ 38. Plaintiff's alleged injury is "the loss of [Plaintiff's] opportunity to sue and seek relief for [his abuse]." *Id.* Specifically, Plaintiff alleges that he lost the ability to pursue claims of deliberate indifference and failure to protect not against Edwards himself, but against Edwards's supervisors. Compl. ¶ 40. Plaintiff's injury would, accordingly, accrue only when Plaintiff knew or should have known Molstad's deterrence caused him to lose the opportunity to pursue legal relief.

The running of the statute of limitations is not apparent on the face of Plaintiff's complaint—at this early stage, it is plausible that Plaintiff only became aware of his forfeited legal rights in the last two years. Plaintiff's allegations are not inplausible—Plaintiff merely asks the Court to take his word that the traumatic effects of his alleged abuse, along with his vulnerabilities at the time, precluded him from being aware of his alleged injury until recently. *Id.* at ¶ 26. At this stage, Plaintiff need not allege more. *See Syed v. M-I, LLC*, 853 F.3d 492, 499

(9th Cir. 2017) ("what suffices at the Rule 12(b)(6) stage may not suffice at later stages of the proceedings when the facts are tested.").

As noted above, *St. Clair* is instructive here. Plaintiff alleges that he suffered eleven instances of abuse at Edwards's hands. Compl. at ¶ 14. Plaintiff alleges that in the wake of the alleged abuse, Plaintiff has experienced numerous mental health challenges. *Id.* at ¶ 16. Plaintiff says that he was unaware of his alleged injury until the last two years. *Id.* at ¶ 25. Plaintiff's position is much like that of the plaintiff in *St. Clair*. Both plaintiffs allege that they were repeatedly sexually abused by an authority figure while in a position of vulnerability. Both allege that they only became aware of their constitutional injury years after the fact. As in *St. Clair*, the Court must recognize the delaying effect that trauma may have on claim accrual and refrain from attempting to divine precisely when Plaintiff became aware not only of his constitutional injury, but its cause. *See Doe v. Reese*, No. 3:24-CV-02011-AB, 2026 WL 125380 at *3 (D. Or. Jan. 16, 2026) (denying a similar 12(b)(6) motion in light of plaintiff's vulnerability and the factual inquiry necessary to ascertain accrual).

Finally, Defendants argue that *Doe v. County of Josephine*, 2015 WL 2412181 (D. Or. 2015) "is highly analogous to the case at hand." Defs.' Mot. 4. The Court disagrees. In *Doe*, plaintiffs alleged that they were sexually abused by their probation officer two decades before filing their claims under Section 1983. Importantly, in that case, "plaintiffs admit that they knew that they had been abused by [their probation officer], and no plaintiff asserts that he did not know or realize that [the probation officer's] abuse caused him injury at the time." *Doe*, 2015 WL 2412181 at *2. In contrast, Plaintiff here specifically alleges that for a variety of reasons, he did not realize that he had been abused or suffered any injury until decades later, when reports surfaced of Dr. Edwards's abuse and years of cover ups surrounding that abuse by OYA officials.

At this stage, it is plausible that Plaintiff only realized at that time that he had not merely been subjected to uncomfortable medical examinations but was a victim of sexual abuse. In short, *Doe* does not support Defendants' arguments here.

## CONCLUSION

Plaintiff pleads facts sufficient to plausibly show that his 1983 claim is timely. Defendant Molstad's Motion to Dismiss, ECF No. 8, is DENIED.

IT IS SO ORDERED.

DATED this 14th day of April 2026.

__s/Michael J. McShane_____
Michael McShane
United States District Judge